# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-100

JOSE RAFUL MARTINEZ, ET AL.

VERSUS

GEORGE ROBERT RIVET, TRUSTEE OF RIVET FAMILY TRUST

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2015-1849
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Sylvia R. Cooks, John D. Saunders, Marc T. Amy, Billy H. Ezell and Phyllis M. Keaty, Judges.

**AFFIRMED.**

Cooks, J., Dissents and assigns written reasons.
Saunders, J., dissents.

Skipper M. Drost
One Lakeshore Drive, Suite 100
Lake Charles, LA  70629
(337) 436-4546
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Jose Raful Martinez
    Maria Victoria Martinez
    Victor Ray Labra

**Merrick J. (Rick) Norman, Jr.**
**Norman Business Law Center**
**145 East Street**
**Lake Charles, LA   70601**
**(337) 436-7787**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **George Robert Rivet, Trustee of Rivet Family Trust**

**AMY, Judge.**

The plaintiffs filed suit against the defendant, seeking enforcement of options to purchase within the leases of their respective duplex properties. The plaintiffs further sought damages for alleged misrepresentations by the defendant. The defendant refuted the plaintiffs' assertions, and, by reconventional demand, sought the plaintiffs' eviction from the properties. The trial court ultimately entered a partial summary judgment in favor of the defendant and ordered the evictions. It did so based upon a determination that the plaintiffs could not establish an ownership interest in the property. The trial court recognized that the plaintiffs' remaining damages claims remained for future proceedings. The plaintiffs appeal. For the following reasons, we affirm.

## Factual and Procedural Background

This appeal involves review of the granting of a partial summary judgment relating to the ownership of two duplex units, one unit leased by Jose Raful Martinez and Maria Victoria Martinez, and one unit leased by Victor Ray Labra. Each was the subject of a "Lease with Option to Purchase" executed, respectively, between The Rivet Family Trust and Mr. and Mrs. Martinez and The Rivet Family Trust and Mr. Labra. In May 2014, the plaintiffs, Mr. and Mrs. Martinez and Mr. Labra, alleged that they exercised the options to purchase by paying all sums due over the course of time and that the defendant, George Robert Rivet, as Trustee of The Rivet Family Trust, refused to transfer the titles to the units to them. The plaintiffs sought specific performance of the options to purchase, associated damages, as well as attorney fees and costs. By amended petition, the plaintiffs alleged that the defendant violated the Unfair Trade Practices and Consumer Protection Law. *See* La.R.S. 51:1401, *et seq.* They again sought damages,

attorney fees and costs available thereunder and re-urged their original request for specific performance of the options to purchase.

The defendant's answer included his denial that the plaintiffs exercised the options to purchase. The defendant asserted instead that the plaintiffs "simply continued to pay the monthly rent after the lease and option expired and the lease (without the option) reconducted on a month to month basis." By reconventional demand, the defendant alleged that the plaintiffs "repeatedly defaulted on the lease by failing to pay the required rent, utilities, sewer electricity [sic], taxes, and insurance, and currently are in arrears" for both units. Therefore, the defendant alleged, the plaintiffs breached the lease and refused to vacate the units upon notice of eviction. The defendant sought an order of eviction, as well as a judgment for unpaid rent, various damages, and for attorney fees. The plaintiffs responded to the reconventional demand with an exception of prematurity and argued that the "[e]viction should not be heard until the true ownership of said property is determined by a Trial on the Merits and therefore Defendant's Rule for Eviction is premature."

The defendant thereafter filed a motion for partial summary judgment, in his capacity as a plaintiff-in-reconvention, seeking a declaration that the subject options to purchase were unenforceable. Chiefly, the defendant asserted that the plaintiffs failed to exercise the options to purchase in writing by their designated expiration date and that any payments made thereafter must be viewed simply as rental payments after the lease reconducted on a monthly basis. The defendant attached various exhibits, including the leases at issue, his affidavit, and the previously-served notices to vacate. The plaintiffs opposed the motion and submitted Mr. Martinez's affidavit, the affidavit of the president of a title

company,[1] and spreadsheets purportedly representing payments made from 2008-2011.

The trial court heard the plaintiffs' exception of prematurity as well as the defendant's motion for partial summary judgment and eviction in September 2015. The trial court first denied the plaintiffs' motion for continuance, finding that the verbal motion was not in proper form and that the written motion was not timely. Reaching the merits of the motion for partial summary judgment, the trial court determined that the plaintiffs had not exercised the now-expired options to purchase. Accordingly, the trial court granted the motion for partial summary judgment and entered the judgment for eviction against the plaintiffs. The trial judge determined that the ruling rendered the exception of prematurity moot. The trial court specifically recognized that the parties' claims for damages would be reserved for further proceedings.

The plaintiffs appeal,[2] asserting that the trial court erred in: 1) denying the motion to continue; 2) granting the defendant's motion for partial summary judgment; 3) granting the motion for eviction; 4) dismissing the exception of prematurity; and in 5) refusing the introduction of parol evidence pertaining to the eviction and application of the Unfair Trade Practices and Consumer Protection Law.

---

[1] The affiant stated that Mr. Martinez approached him in October 2012 regarding "formalizing the purchase of two duplexes by Martinez and Victor Ray Labra from The Rivet Family Trust." He stated that he prepared cash deeds to transfer title to both properties, but was later informed by Mr. Martinez that "Mr. Rivet refused to sign." The affiant further stated that he "contacted Mr. Rivet on behalf of Martinez to come in and sign the documents and he refused."

[2] By prior opinion, a panel of this court addressed the defendant/appellee's motion to dismiss the appeal filed with this court. *See Jose Raful Martinez, et al. v. George Robert Rivet, Trustee of the Rivet Family Trust*, 16-100 (La.App. 3 Cir. 4/13/16), 190 So.3d 461.

3

**Discussion**

*Motion to Continue*

The plaintiffs first briefly question the trial court's denial of their request for a continuance at the time of the September 2015 hearing. They note that Louisiana Code of Civil Procedure Article 1601 provides discretionary grounds for a continuance "in any case if there is good ground therefor." They explain, as they did at the hearing, that they had not received discovery requested of the defendant. Thus, they contend that the trial court erred in proceeding with the hearing rather than granting the continuance.

Notably, "[t]he denial of a motion for continuance will not be disturbed absent a showing of an abuse of discretion by the trial court." *Newsome v. Homer Mem. Med. Ctr.*, 10-0564, p. 2 (La. 4/9/10), 32 So.3d 800, 802. On review, we find no such abuse of discretion. Although the plaintiffs cited discovery requests that had been pending for several months, the trial court noted that the plaintiffs had not pursued those requests by a motion to compel. *See, e.g.*, La.Code Civ.P. art. 1469. After being informed that the discovery request "was filed or sent on June 25th of 2015[,]" and that the motion for partial summary judgment was filed on July 31st, the trial court observed that a motion to compel "could have been filed in late July or at any time in August in anticipation of this, which would have then, if they had not complied, given you a much better argument to seek a continuance of this date, but you haven't filed anything." The trial court additionally noted that the continuance was merely requested verbally at the hearing, rather than by writing and in advance of the hearing. While the trial court did not formally reference the local rules of court, we find no abuse of discretion in a determination

4

that the contemporaneous nature of the request for continuance mitigated from a finding of the "good ground" of La.Code Civ.P. art. 1601.[3]

*Merits*

The plaintiffs next combine argument as to various issues to contest the trial court's determination by partial summary judgment that they could not establish an ownership interest in the properties. We consider each in turn.

Partial Summary Judgment

As explained by La.Code Civ.P. art. 966(A)(2),[4] "[t]he summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish those ends." Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2).

The moving party bears the burden of proof on the motion for summary judgment. La.Code Civ.P. art. 966(C)(2). However, if the moving party will not bear the burden of proof at trial on the issue presented, the moving party is not

---

[3] *See also* La.Code Civ.P. art. 1602, which relates to a moving party's efforts to obtain evidence, provides, in part, that: "A continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case[.]"

[4] Louisiana Code of Civil Procedure Article 966 was amended by 2015 La. Acts No. 422, § 1. However, its provisions became effective on January 1, 2016, after the motion for partial summary judgment was heard. Thus, we consider this matter under the version of the Article in effect at that time. *See* 2015 La. Acts No. 422, § 2 ("The provisions of this Act shall not apply to any motion for summary judgment pending adjudication or appeal on the effective date of this Act.").

required "to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id.* On appeal, the reviewing court considers the matter *de novo*, using the same criteria that governed the trial court's determination as to whether summary judgment is appropriate. *Dunn v. City of Kenner*, 15-1175 (La. 1/27/16), 187 So.3d 404.

By their petition, the plaintiffs sought enforcement of the options to purchase contained within their respective leases. The defendant, however, rejected the enforceability of those options and asserted that the options had merely expired. The defendant introduced the subject leases in support of the motion for partial summary judgment in that regard. The Martinez lease designated its thirty-six month term from November 15, 2006 to October 15, 2009,[5] required a monthly payment of $2,165.36, and contained insurance and tax payment provisions. It further included an "Option to Purchase" section which provided, in pertinent part:

> Landlord further appears and declares that for and in consideration of the payment of the above **all of the above** [sic] monthly rental payments, Landlord then grants unto Tenant the exclusive right, privilege or option to purchase the property leased hereinabove and heretofore described subject to the conditions hereinafter set forth and for the price and terms of payment set forth to-wit:
>
> 1. In the event that Tenant exercises his option herein granted, the purchase price of the property is to be **$130,000.00** subject to a credit of $16,000.00 paid in cash leaving an unpaid balance of $114,000.00 and subject to a credit for all previous monthly rentals paid to date . . . .

---

[5] Notwithstanding the November 2006 commencement date, the lease reflects a creation date of December 2008. In further filings in this matter, Mr. and Mrs. Martinez alleged that they first executed an Act of Vendor's Lien with the defendant in October 2006, but that the Act was cancelled by an August 2007 dation en payment.

**2.** __In order to exercise his option to purchase Tenant shall notify Landlord on or before October 15, 2009 by Certified Mail Return Receipt Requested that Tenant wishes to exercises his option to purchase. Said notice shall be sent to Landlord at the address listed below.__

. . . .

**8.** Should Tenant/buyer violate any of the conditions of the lease, or fail to exercise the option the lease is automatically terminated and this option shall be automatically extinguished without any action being taken by Landlord/seller and the option shall be considered as never have been written. Should Tenant/buyer not exercise his option within the above stated time limit his option shall be automatically extinguished without any action being taken by Landlord/seller and the option shall be considered as never have been written.

Also confected on December 17, 2008, the Labra lease designated its thirty-six month term from October 1, 2007 to September 30, 2010, and required a monthly rate of $2,165.27. Like the Martinez lease, the Labra lease included insurance and tax payment provisions. Its respective "Option to Purchase" section provided, in part, as follows:

Landlord further appears and declares that for and in consideration of the payment of the above **all of the above** monthly rental payments, Landlord then grants unto Tenant the exclusive right, privilege or option to purchase the property leased hereinabove and heretofore described subject to the conditions hereinafter set forth and for the price and terms of payment set forth to-wit:

**1.** In the event that Tenant exercises his option herein granted, the purchase price of the property is to be **$130,000.00** subject to a credit of $4,000.00 paid in cash leaving an unpaid balance of $126,000.00 and subject to a credit for all previous monthly rentals paid to date . . . .

**2.** __In order to exercise his option to purchase Tenant shall notify Landlord on or before September 30, 2010 by Certified Mail Return Receipt Requested that Tenant wishes to exercise his option to purchase. Said notice shall be sent to Landlord at the address listed below.__

. . . .

8. Should Tenant/buyer violate any of the conditions of the lease, or fail to exercise the option the lease is automatically terminated and this option shall be automatically extinguished without any action being taken by Landlord/seller and the option shall be considered as never have been written. Should Tenant/buyer not exercise his option within the above stated time limit his option shall be automatically extinguished without any action being taken by Landlord/seller and the option shall be considered as never have been written.

Thus, the leases themselves clearly reflect that, in order to exercise the options to purchase, the plaintiffs/tenants were required to contact the defendant/landlord by the respective designated dates and to do so by certified mail. *See* La.Civ.Code art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."). *See also Prejean v. Guillory*, 10-0740 (La. 7/2/10), 38 So.3d 274.

In support of the motion for partial summary judgment, the defendant also submitted his affidavit, wherein he stated that "The Rivet Trust never received a certified letter or any other notice of an intent to exercise the options which expired approximately five years ago." The defendant also broadly stated within the affidavit that the "defendants-in-reconvention failed to exercise either of the options to purchase."

In opposition, the plaintiffs argued that they had been in the process of purchasing the properties for a number of years, that they continued to make payments after the expiration of the option period contained in the lease term, and that the payments exceeded the sums due under the option to purchase. The plaintiffs included Mr. Martinez's affidavit in their opposition, wherein he explained the plaintiffs' payment history for the two properties and alleged as follows:

I have approached Mr. Rivet on numerous occasions inquiring about the transfer of title and was assured by him that I (me and my

8

wife (891)[6] and Victor Ray Labra (893) were the legal owners of the duplexes and not to worry that the property was paid for in full.

I had heard rumors that Mr. Rivet was going to file for bankruptcy. I went to see him about the duplexes. He told me that *"he had enough other problems and do not worry him about the duplexes, they were paid in full and would not be a part of a bankruptcy because the duplexes are yours, you don't need a piece of paper to prove it"*.

(Emphasis in the original.) The plaintiffs suggest that differences as to accounts of the amounts paid and the allegations the defendant's representations as to their ownership of the property indicates that the written contract was modified by verbal agreement and that the options to purchase may be viewed as having been exercised.

Despite the differing accounts cited by the plaintiffs, however, La.Code Civ.P. art. 966(B)(2) provides that summary judgment shall be rendered upon a showing that there is no genuine issue of "material" fact. "A fact is 'material' when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery." *Cheramie Services, Inc. v. Shell Deepwater Prod., Inc.*, 09-1633, p. 10 (La. 4/23/10), 35 So.3d 1053, 1059. The plaintiffs attempt, in part, to establish ownership of the properties via the options to purchase. However, the plaintiffs did not exercise those options as specified by the leases as it is undisputed that they did not notify the defendant of such by the appropriate dates and by certified mail. As seen above, that method of selection is required by Paragraph 2 of the option to purchase section of the respective leases. Furthermore, Paragraph 8 provided that both the lease terminated and the option to purchase "automatically extinguished" upon failure to exercise the option. Thus,

---

[6] The Leases with Option to Purchase listed municipal addresses as 891 Sistrunk Road and 893 Sistrunk Road, respectively.

as of the end of the specified lease terms of October 15, 2009, for the Martinez property, and September 30, 2010, for the Labra property, the options to purchase were extinguished. Payments made after the options were extinguished would, thus, be irrelevant for purposes of purchase thereunder.

Neither is there merit in the plaintiffs' argument that genuine issues of material fact remain with regard to whether the parties verbally modified the leases so as to permit verbal acceptance of the options to purchase. Certainly there is dispute as to whether such verbal communication occurred. However, resolution of that issue is not relevant to the pertinent cause of action, i.e., enforceability of the options to purchase. In addition to the lease's requirement that the defendant be notified that the plaintiffs chose to exercise the options by certified mail, the Louisiana Civil Code indicates that a writing was required in this instance.

"[A]n option to buy, or an option to sell, is a contract whereby a party gives to another the right to accept an offer to sell, or to buy, a thing within a stipulated time." La.Civ.Code art. 2620. The "option must set forth the thing and the price, and meet the formal requirements of the sale it contemplates."[7] *Id.* The options, in this instance, contemplate the sale of an immovable. Of course, "[a] sale or promise of sale of an immovable must be made by authentic act or by act under private signature, except as provided in Article 1839." La.Civ.Code art. 2440. In this regard, La.Civ.Code art. 1839 indicates that "[a] transfer of immovable property must be made by authentic act or by act under private signature. Nevertheless, an oral transfer is valid between the parties when the property has

---

[7] Further, La.Civ.Code art. 2621 provides that: "The acceptance or rejection of an offer contained in an option is effective when received by the grantor. Upon such an acceptance the parties are bound by a contract to sell. Rejection of the offer contained in an option terminates the option but a counteroffer does not."

been actually delivered and the transferor recognizes the transfer when interrogated on oath." Clearly, the latter circumstances are not present. Additionally, jurisprudence has construed this requirement of a writing to extend to all contracts regarding transfers of immovable property. *See Chauvin v. Bohn*, 411 So.2d 442, n. 4 (La.1982). *See also East Tangipahoa Dev. Co., LLC v. Bedico Junction, LLC*, 08-1262 (La.App. 1 Cir. 12/23/08), 5 So.3d 238, *writ denied*, 09-0166 (La. 3/27/09), 5 So.3d 146. As observed by the trial court, and as addressed below, the plaintiffs' concerns regarding any alleged verbal assurances may pertain to their remaining claim for damages. They do not, however, determine the enforceability of the options to purchase.

Thus, in consideration of the parties' submissions, we find that the trial court did not err in granting the motion for partial summary judgment.

Eviction

While the plaintiffs challenge the judgment for eviction, they do not specifically question whether the defendant met the burden of proving entitlement to eviction per La.Code Civ.P. art. 4701, *et seq.* Rather, the plaintiffs challenge the judgment for evictions within the larger context of the ownership issue determined by the partial summary judgment, a ruling we find not to be in error. Neither do we find error in the trial court's related order of eviction. Instead, the respective lease terms of 2009 and 2010 had ended and, absent the above-claim of ownership, the lease may be viewed as having reconducted by operation of law on a month to month basis.[8] It is further unquestioned that the defendant provided notices to

---

[8] *See* La.Civ.Code art. 2721 (providing that "A lease with a fixed term is reconducted if, after the expiration of the term, and without notice to vacate or terminate or other opposition by the lessor or the lessee, the lessee remains in possession . . . (2) For one week in the case of other leases with a fixed term that is longer than a week[.]"). *See also* La.Civ.Code art. 2723

11

vacate for both properties in May 2015, citing "Expiration of lease" on each notice. *See* La.Code Civ.P. art. 4701. Yet, the plaintiffs remained in the properties at the time of the hearing in light of their ownership claim, now found to be without merit.

Accordingly, the plaintiffs' arguments regarding eviction are without merit.

*Prematurity and Parol Evidence*

Finally, the plaintiffs argue that the trial court erred in denying their exception of prematurity and that a trial on the merits was required as to ownership. Such a trial, the plaintiffs suggest, would allow the introduction of parol evidence due to their allegations of misrepresentations as to the options to purchase. They further contend that the parol evidence should have been admitted insofar as it may relate to their claim for unfair trade practices.

As recognized by the trial court, however, the parol evidence sought to be introduced by the plaintiffs cannot be viewed as relating to the enforcement of the options to purchase. Louisiana Civil Code art. 1848 provides that:

> Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent or to prove that the written act was modified by a subsequent and valid oral agreement.

While the plaintiffs contend that the interests of justice require the introduction of the evidence as to ownership, we note that they do not seek to prove a vice of consent in the confection of the lease. They instead seek to enforce the contract. To the extent they seek a modification of the options to purchase, a writing was required for a modification as explained above. Thus, evidence could not be

---

(providing that "The term of a reconducted nonagricultural lease is: (1) From month to month in the case of a lease whose term is a month or longer[.]").

12

admitted to prove that the written options to purchase were "modified by a subsequent and valid oral agreement." Accordingly, we find no error in the trial court's rulings denying the exception of prematurity.

Finally, we find no merit in the plaintiffs' argument regarding the necessity of the trial court's consideration of parol evidence as it may relate to their remaining claim for unfair trade practices. Rather, the trial court considered the partial summary judgment on the issue of the options to purchase, the rule of eviction, and the plaintiffs' exception of prematurity. The trial court did not consider the plaintiffs claim of remaining damages associated with the course of conduct between the parties. The trial court instead remarked that it was "comfortable granting the motion for partial summary judgment, because I think that justice can be served and the rights of the lessees/buyers can be protected in further proceedings that relate to their understandings and their remedies[.]"

This assignment lacks merit.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the plaintiffs/defendants-in-reconvention/appellants, Jose Raful and Maria Victoria Martinez and Victor Ray Labra.

**AFFIRMED.**

JOSE RAFUL MARTINEZ, ET AL.

VERSUS

GEORGE ROBERT RIVET, TRUSTEE OF RIVET FAMILY TRUST


**Cooks, J., dissents.**

Plaintiffs sued Defendant to enforce two options to purchase immovable property consisting of two duplexes. They also sought damages for fraudulent misrepresentations and violations of the Louisiana Unfair Trade Practices and Consumer Protection Law. The trial judge granted partial summary judgment in favor of Defendant and also evicted Plaintiffs. The trial court found because Plaintiffs admitted they did not give any written notice to exercise the options to purchase as specifically required in the written agreements, and as required by Louisiana law concerning immovable property, they could not prove an ownership interest in the property. Thus, the trial court ordered the eviction but recognized Plaintiffs have unresolved damage claims which can be addressed in future proceedings.

The majority affirms the trial court's granting partial summary judgment based largely upon Plaintiffs' acknowledgment in their affidavit that: "The Rivet Trust never received a certified letter or any other notice of intent to exercise the options which expired approximately five years ago." The majority finds Plaintiffs' assertions that they continued to make payments after the option period

1

expired and paid more to the Trust than the agreed upon price are not dispositive. The majority was not persuaded by Plaintiffs' assertions of detrimental reliance, unjust enrichment and fraudulent misrepresentation. Plaintiffs' claim they were induced by Defendant's continued representations that they indeed owned the property, which they paid for, but he repeatedly claimed he was too busy to sign a deed each time they asked. The majority acknowledges Plaintiffs' presented evidence of these assertions in the affidavits of Mr. Martinez and the affidavit of the president of a title company at the motion for summary judgment.

The trial court's and the majority's reliance on the requirement of Civil Code Article 1839 that "[a] transfer of immovable property must be made by authentic act or by act under private signature," relies on decisions involving facts occurring before the adoption of La.Civ.Code art. 1967, which became effective January 1, 1985, and misapprehends the nature of this dispute. The Louisiana Supreme Court, in *Morris v. Friedman*, 94-2808, (La. 11/27/95), 663 So.2d 19, 25, relying on this court's decision in *Ogden v. Ogden*, 93-1413, p. 5 (La.App. 3 Cir. 9/21/94), 643 So. 2d 245, 248, *writ denied,* 94-2539 (La. 1/13/95), 648 So.2d 1339, noted in footnote 11(emphasis added), ***"[t]he addition of La.C.C. art. 1967 in the Civil Code as an additional ground for enforceability of obligations may well alter this analysis."*** This fact was also noted by this court in *Morris v. People's Bank & Trust Co*., 580 So.2d 1029, 1033 (La.App. 3 Cir.), *writ denied*, 588 So.2d 101 (La.1991). Louisiana Civil Code Article 1967 (emphasis added), entitled "Cause defined, detrimental reliance" provides:

> Cause is the reason why a party obligates himself.
>
> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying.

2

Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

Indeed, in two subsequent cases this court, applying La. Civ.Code art. 1967, found the requirement that an agreement be in writing in cases involving onerous agreements controlled by Article 1967, *no longer applied after its effective date*. *See Dugas v. Guillory*, 97-398 (La.App. 3 Cir. 10/7/98), 719 So.2d 719 and *Cenac v. Hart*, 98-1679 (La.App. 3 Cir. 4/7/99), 741 So.2d 690. Relying on this court's decisions in these cases, the Louisiana Fifth Circuit Court of Appeals in *Rhoads v. Quicksilver Brokers*, Ltd. 01-768, p. 9 (La.App. 5 Cir. 1/14/01), 801 So.2d 1284, 1289 (emphasis added) reversed the lower court's grant of summary judgment noting:

> Plaintiff contends the "cause" argument is simply defendant's attempt to impose a suspensive condition on plaintiff's right to exercise her option, so that defendant seeks *to orally modify* the terms of the stock option agreement. Plaintiff points out that, at the time the stock option agreement was confected, Louisiana had a Statute of Frauds regarding securities that stated a contract for the sale of securities *was not enforceable unless it was in writing*. La.R.S. 10:8-319 (Repealed).

> In *Morris v. Friedman,* 94-2808 (La.11/27/95), 663 So.2d 19, 26, the Louisiana Supreme Court held that a claim of equitable estoppel or detrimental reliance will not lie when the law requires the contract to be in writing: "[T]here can be no recovery on the basis of equity where, as in the instant case, a positive statutory writing requirement, not adhered to, exists." *The Morris court noted, however, that the facts in the case occurred in 1984, prior to the effective date of La.C.C. art.1967. . .*

> In *Dugas v. Guillory,* 97-398 (La.App. 3 Cir. 10/7/98), 719 So.2d 719, 726, in which former employees of a company brought action against the principal for *breach of an oral promise to transfer 65% of the company's stock to the employees*, the court held that under La.C.C. art.1967 and the given circumstances of the suit, the *plaintiffs' reliance on the defendant's oral promise, although not executed in written form, was reasonable because the promise was onerous in nature.*

**As explained in *Dugas* and in *Cenac v. Hart,* 98-01679 (La.App. 3 Cir. 4/7/99), 741 So.2d 690, 695, the 1985 enactment of La.C.C. art.1967 was controlling over the Statute of Frauds. . . .**

The Louisiana Second Circuit Court of Appeals discussed the import of La.Civ. Code art. 1967 in *Benton v. Clay*, 48,245 (La. App. 2 Cir. 8/7/13), 123 So. 3d 212, 222-23 (emphasis added):

> Detrimental reliance is designed to prevent injustice by barring a party from taking a position ***contrary to his prior acts, admissions, representations, or silence . . . .*** This is because detrimental reliance is not based upon the intent to be bound. ***Rather, the basis of detrimental reliance is the idea that a person should not harm another person by making promises that he will not keep. Thus, the focus of analysis of a detrimental reliance claim is not whether the parties intended to perform, but, instead, whether a representation was made in such a manner that the promisor should have expected the promisee to rely upon it, and whether the promisee so relies to his detriment.*** *Suire v. Lafayette City–Parish Consol. Gov't, supra; Allbritton v. Lincoln Health Syst., Inc., supra.*

> FN5. Mr. Clay contends that, because the agreement to buy the property jointly with Ms. Benton was not written, the doctrine of detrimental reliance does not apply, citing *Morris v. Friedman,* 94–2808 (La.11/27/95), 663 So.2d 19. However*, since the enactment of La. C.C. art.1967, Louisiana courts have found detrimental reliance to occur despite the fact that an onerous contract may lack a requisite formality such as written execution in authentic form*, provided that the requisites of La. C.C. art.1967 are satisfied. See *Dugas v. Guillory,* 97–398 (La.App. 3d Cir.10/7/98), 719 So.2d 719.

If Plaintiffs can prove their allegations regarding detrimental reliance on the assurances by Defendants which caused them to forego the formalities provided in the agreements they may still establish an ownership interest in the at issue properties. The "in writing" requirement mentioned by the majority has been relaxed by the current provisions on detrimental reliance. Thus, this case is not ripe for summary judgment and I respectfully dissent.

4